1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7
8

LEONARD LEE MOORE,

9                              Plaintiff,

10        v.

11    JOHN FIRTH, et al.,

12                              Defendants.

CASE NO. 2:19-cv-00900-BAT

**ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

13    Defendants Jane Doe Davidson, John Doe Davidson, Jane Doe Firth, John Firth, John

14    Doe Hutton, Kat Hutton, J Doe Correctional Officers 1-5, J Doe Medical Director Monroe

15    Correctional Complex, J Doe Monroe Correctional Facility Superintendent, Jane Doe Jewitt,

16    Steven Jewitt, Jane Doe Lauren, Kenneth Lauren, John Doe Opulencia, Myisha Opulencia, Jane

17    Doe Scallon, John Doe Scallon, Bo Stanbury, Jane Doe Stanbury[1] move for summary judgment

18    dismissal of Plaintiff Leonard Lee Moore's claims pursuant to Fed. R. Civ. P. 56. Dkt. 30.

19    Plaintiff opposes the motion (Dkt. 31), and Defendants filed a reply (Dkt. 33).

20        After carefully reviewing the motion, responses, and documents filed in support and in

21    opposition, the court concludes that the motion for summary judgment should be granted.

22
23

---

[1] As to each named defendant, Plaintiff also sued their spouse "and the marital community
comprised thereof."

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 1

Prior to discussing the merits of Defendants' motion for summary judgment, the court turns to three preliminary issues – a motion to strike, a request to re-open discovery and provide a late Rule 26 expert disclosure, and a request to substitute a party.

       1.   <u>Defendants' Motion to Strike</u>

Pursuant to LCR 7(g), Defendants request the Court strike portions of Plaintiff's declaration and attachments filed in opposition to the motion for summary judgment. Dkt. 32. Defendants argue that Plaintiff's declaration is replete with inadmissible hearsay, unauthenticated attachments, and arguments that are either factually unsupported or misconstrue the facts. The motion to strike is granted in part, as explained below.

When ruling on a motion for summary judgment, "a trial court can only consider admissible evidence." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir.2002). "Authentication is a condition precedent to admissibility and this condition is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims." *Id*. The Ninth Circuit has "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." *Id*. "In a summary judgment motion, documents authenticated through personal knowledge must be attached to an affidavit that meets the requirements of Fed.R.Civ.P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Id*. at 773–4. "However. a proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902." *Id*. at 774.

Defendants argue that the five exhibits attached to Plaintiff's declaration do not meet the authenticity requirements of ER 901 because they are simply attached as "true and accurate" copies, with no explanation of their origin, completeness, or meaning.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 2

1    The Court must determine whether some basis for authentication exists under Federal

2    Rule of Evidence 901(b) or 902. *Orr*, 285 F.3d at 774. Rule 901(b) describes ten ways in which

3    documents can be authenticated. Fed.R.Evid. 901(b). One way is if "the appearance, contents,

4    substance, internal patterns, or other distinctive characteristics of the item, taken together with all

5    the circumstances" suggest that the document is what the proponent claims it to be. Fed.R.Evid.

6    901(b) (4).

7        Having examined the exhibits, the court finds that there is sufficient basis for finding that

8    they have been authenticated. Exhibit A is an unsigned Police Traffic Collision Report No.

9    E551720, which contains the header of the State of Washington, is sequentially numbered, and

10   appears to have been completed by the investigating officer at the scene of the motor vehicle

11   accident. Exhibit B is a copy of Washington DOC Policy 610.040 "Health Screenings and

12   Assessments," which contains the header of the State of Washington Department of Corrections

13   and is sequentially numbered. Exhibit C consists of various health services kites written by

14   Plaintiff. Exhibit D consists of medical Primary Encounter Reports that were authored and/or

15   reviewed by RN K. Hutton on June 10, 2016 and June 14, 2016. The reports contain a

16   Department of Corrections' header and are sequentially numbered. Exhibit E is an eight-page

17   Inpatient Report of Plaintiff's hernia surgery, at Providence Regional Medical Center, which is

18   sequentially numbered, appears to have been prepared by or at the direction of Dr. Gallagher,

19   and contains distinctive characteristics of a surgical report.

20       In sum, the appearance, contents, distinctive characteristics, and substance of these

21   exhibits, taken together with all the circumstances, suggest that the exhibits are what Plaintiff

22   claims they are, thus satisfying the authentication requirements under Rule 901(b)(4). However,

23   as to the health services kites attached to Plaintiff's declaration, the court notes these have

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 3

1    minimal evidentiary value for at least two reasons.

2    First, except in five instances, Plaintiff submitted only the pink copy of his kites, which

3    contain only his statements and not the responses he received from a prison official (yellow

4    copies). Plaintiff asserts that he did not receive responses to many of his kites (although he does

5    not identify which kites went unanswered) and that he "thought prison staff were supposed to

6    respond to a written kite." Dkt. 32 at 4. According to Nurse Hutton, who reviewed the kites

7    submitted by Plaintiff regarding his post-accident pain and hernia, all of Plaintiff's kites were

8    responded to in accordance with DOC policy. Dkt. 30-2, Attach. E. The court notes that in their

9    initial disclosures, Defendants identified Plaintiff's grievance file (Bates Nos. 91040001-012)

10    and medical file (Bates Nos. 91030001-241 and x-ray files dated 5/11/2016, 6/10/16, and

11    10/7/16), so the nature of Plaintiff's kites and complaints and Defendants' responses to the kites

12    and complaints may be easily verified. Thus, the only facts for which the pink copies are

13    considered is the date they were submitted and the nature of Plaintiff's medical complaint.

14    Second, as Plaintiff claims violation of his constitutional rights when Defendants refused to

15    properly treat his hernia, kites for relating to post-accident "mental health needs" are not

16    relevant.

17    Although the court finds Plaintiff's exhibits to be sufficiently authenticated, to the extent

18    Plaintiff offers any conclusory or speculative explanation and/or mischaracterizations of those

19    exhibits, they will not create genuine issues of material fact. *Anheuser–Busch, Inc. v. Natural*

20    *Beverage Distributors*, 69 F.3d 337, 345 (9th Cir.1995) ("... conclusory or speculative testimony

21    is insufficient to raise a genuine issue of fact to defeat summary judgment.").

22    Defendants also argue that Plaintiff's declaration contains many inadmissible hearsay

23    statements. For example, Plaintiff states that the prison superintendent and/or administration

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 4

1    managers told him to stop requesting medical aid or he would be placed in an isolation cell.

2    Plaintiff also states that both an undisclosed doctor at Harborview hospital and his personal

3    physician Dr. Gallagher told him that his hernia needed surgical repair and that such repair

4    should be done right away. Hearsay evidence is any out of court statement that is being offered

5    for the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Because Plaintiff is offering these

6    statements for the truth of the matter stated, they are inadmissible hearsay not subject to any

7    hearsay exception. *See* Fed. R. Evid. 802.

8    Finally, to the extent any of the incidents described on the pages of Plaintiff's declaration

9    are not based on first-hand knowledge, they will not be considered by the court. *See* Fed. R. Civ.

10   P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on

11   personal knowledge, set out facts that would be admissible in evidence, and show that the affiant

12   or declarant is competent to testify on the matters stated.")

13        2.    <u>Plaintiff's Request for Additional Time</u>

14   Plaintiff failed to disclose experts and expert reports by the February 10, 2020 deadline

15   and failed to adhere to the May 18, 2020 discovery deadline. According to Defendants, Plaintiff

16   did not respond to interrogatories and requests for production and promulgated no discovery

17   requests of his own within the deadlines set by the court. Dkt. 33, p. 2. Neither did Plaintiff

18   request any relief from the deadlines set by the court.

19   Plaintiff now requests leave to submit an untimely Fed.R.Civ.P. 26 report and asks the

20   court to re-open discovery. Dkt. 31, pp. 14-15. Plaintiff claims that discovery is ongoing, that he

21   is still assembling medical records, and that he has been delayed due to the COVID-19

22   pandemic. Defendants identified Plaintiff's medical records in their initial disclosures in

23   September of 2019 (Bates Nos. 91030001-241 and x-ray files dated 5/11/2016, 6/10/2016 and

2031), Plaintiff's surgery occurred on May 2, 2017, and Plaintiff produced a copy of Dr.

Gallagher's surgical notes in opposition to the summary judgment motion. Dkt. 32, Moore Decl.,

Attach. E, pp. 3-6. Thus, it appears Plaintiff has, or has had access to needed materials for about

ten months and had about seven months to complete discovery. *See* September 27, 2019 Order at

Dkt. 12 (establishing discovery deadline of May 18, 2020). Additionally, Plaintiff fails to

provide the necessary affidavit setting forth the nature of any missing discovery and describing

how such additional discovery is essential to oppose summary judgment. *See Getz v. Boeing Co.*,

654 F.3d 852, 868 (9th Cir. 2011) (citing Fed. R. Civ. P. 56(f)).

As to Plaintiff's failure to comply with Rule 26(a), Plaintiff fails to "demonstrate that

[his] failure to comply with Rule 26(a) [was] substantially justified or harmless." *Torres v. City*

*of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008).  Plaintiff's expert disclosure and reports

were due on February 10, 2020. Dkt. 12. Plaintiff sought no extension of this deadline.

When expert testimony is required to establish the elements of a cause of action,

exclusion of expert opinions not properly disclosed supports summary judgment and dismissal.

*HM Hotel Properties v. Peerless Indem. Ins. Co.*, 624 F. Appx. 520, 521–22 (9th Cir. 2015)

(memorandum) (unpublished).

For these reasons, the court denies Plaintiff's request for to submit an untimely Rule 26

report and to re-open discovery.

3.     Substitution of Defendant Lauren

Defendants filed an Answer to Plaintiff's Complaint on October 7, 2019 stating, in part:

"Defendants further identify Defendant Kenneth Lauren as the J. Doe Facility Medical Director

at all times relevant to this matter and further note that Dr. Lauren has passed away." Dkt. 29, ¶

8. More than 90 days has passed since Plaintiff received that notification, and he has failed to

1  move for substitution of an appropriate party. Rule 25(a)(1) of the Federal Rules of Civil

2  Procedure provides "If the motion is not made within 90 days after service of a statement noting

3  the death, the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1).

4        Plaintiff now requests leave of the Court to amend his Complaint and claims the COVID-

5  19 pandemic is the reason he failed to follow the parameters of Fed. R. Civ. P. 25. However,

6  eight months have passed since the Plaintiff was notified of Defendant Lauren's death and he

7  provides no explanation for his failure to act in that time. Moreover, as described in more detail

8  herein, allowing the amendment and substitution of either Defendant Lauren's estate or the

9  current Medical Director, Dr. Awad, would simply substitute new defendants who lack the

10  required personal involvement in Plaintiff's treatment.

11  STATEMENT OF FACTS

12        Plaintiff was an inmate at the Washington State Department of Correction ("DOC")

13  Monroe Correctional Complex ("MCC"). Dkt 1, p. 2. Plaintiff alleges that he developed a right

14  inguinal hernia injury prior to June 9, 2016, which was diagnosed by his physicians. Dkt. 1, p. 5.

15  Plaintiff provides no evidence of this diagnosis, but states in his declaration that the pain he

16  experienced from the hernia "was not so great and I could still carry on my daily routine." Dkt.

17  32, Declaration of Leonard Moore, ¶ 3.[2]

18        On June 9, 2016, Plaintiff was a member of a work crew returning to MCC in a DOC van

19  driven by Correctional Officer Firth. Dkt. 1, pp. 4-5. The van was involved in a collision at an

20  intersection when the other driver failed to yield. Dkt. 32-1, Ex. A, p. 5. No injuries were noted

21  by the police officer at the scene. *Id.*

22

23

[2] Dr. Awad explains that "[a]n inquinal hernia occurs when tissue protrudes through a weak spot in the abdominal muscles. Dkt. 30-2, Attach. I, Awad Decl., ¶ 22.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 7

1   Plaintiff asserts that the accident caused him to experience significant pain in his back,

2   neck, and right shoulders and that the "force of the accident also made my hernia injury

3   significantly worse." Dkt. 32, ¶ 7. In his complaint and declaration, Plaintiff asserts that

4   Defendant Firth "deliberately decided not to bring Plaintiff Moore to a local hospital that was

5   closer to the accident scene than the prison." Dkt. 1, p. 5; Dkt. 32, Moore Decl., ¶ 10.

6   However, when Plaintiff reported to sick call the day after the accident, he told medical

7   staff that he did not have pain after the accident but did feel pain the next day in his lower back

8   and shoulder. He made no complaints of pain from his hernia or exacerbation to his hernia due to

9   the accident. Dkt. 30-2, Attach I, Declaration of Areig Awad, MCC Medical Director; ¶¶ 13-16;

10   Attach F, Declaration of Physician's Assistant Bo Stanbury, ¶¶ 6-10; and, Attach E, Declaration

11   of Registered Nurse Kat Hutton, ¶¶ 6-10. The Primary Encounter Report dated June 10, 2016

12   confirms that Plaintiff was seen by Nurse Hutton and Plaintiff reported that he did not have much

13   pain after the accident but started having pain that night. At sick call, he complained of radiating

14   pain to his right leg, neck, and shoulder. Dkt. 32, Moore Decl., Ex. D, p. 2. Nurse Hutton ordered

15   x-rays of his spine, lumbar sacral 5 views, both shoulders, prescribed a lay-in and Ibuprofen,

16   administered 60 mg Torodol and ice, and told Plaintiff to sign up for sick call if "not better or

17   worsening." *Id.* On June 14, 2016, Plaintiff was seen by PA Stanbury and Plaintiff asked for an

18   extra mattress, hot water bottle, and more pain medication. *Id.* The notes indicate that an extra

19   mattress was requested for Plaintiff and Plaintiff was told to return if he was not better or his

20   symptoms worsened. *Id.* at p. 3.

21   Plaintiff later returned to sick call and complained that his hernia had worsened due to the

22   accident. Over the next six months, medical staff saw and treated Plaintiff during sick call nine

23   times in relation to his complaints of lower back pain and his hernia. Dkt. 30-2, Attach I, Awad

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 8

Decl., ¶¶ 17-18. Defendant Dr. Lauren examined Plaintiff at least two times. *Id*. According to Dr.

Awad, medical staff and Dr. Lauren prescribed Plaintiff pain medication as medically required.

*Id.*, Awad Decl., ¶ 19. Each time Plaintiff went to sick call for issues related to his inguinal

hernia, the hernia was easily reducible, meaning that it would cease protruding either when

pressure was applied or when the patient was repositioned. *Id.*, Awad Decl., ¶¶ 24-31; Attach. F,

Stanbury Decl., ¶12, Attach. E, Hutton Decl., ¶ 12. Nurse Hutton also attests that Plaintiff's pain

from the accident subsided over a period of several weeks and the pain never impacted his

activities of daily living as defined by the Offender Health Plan ("OHP"). Dkt.30-2, Attach. E,

Hutton Decl., ¶ 10.

According to Dr. Awad, a reducible hernia is generally not life threatening and under the

OHP in place at the time, the preferred medical approach is to observe the hernia to assure that it

does not become non-reducible, causes intractable pain or interferes with the patient's activities

of daily living (such as toileting and self-care). Dkt. 30-2, Attach. I, Awad Decl., ¶¶ 20, 21, 24-

31, Exh. A. Medical evidence and research shows that some reducible hernias do not require

surgery and clinical monitoring is an acceptable and medically appropriate treatment. *Id.*, ¶¶ 25,

26. "Surgical intervention carries with it certain serious complications including infection,

additional pain, protracted recovery time, and others." *Id.*, Awad Decl., ¶ 27.

Plaintiff was released from MCC on February 17, 2017. Dkt. 1, p. 8. On April 28, 2017,

Plaintiff was examined by William Gallagher, M.D. at Providence Regional Medical Center and

after Dr. Gallagher discussed options with Plaintiff, Plaintiff decided to go ahead with an elective

hernia repair on May 1, 2017. The surgical notes indicate that Plaintiff had "a moderate right

inguinal hernia," a condition he had for a few years. Plaintiff rated his discomfort as a 2-3 out of

10 and was taking 200 mg of ibuprofen as needed for pain. Dr. Gallagher noted that Plaintiff

found the "hernia bothersome enough to want to go ahead and have it repaired at [that] time."

Dkt. 32, Moore Decl., Attach. E, pp. 3-6.

<u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine issue of fact for trial if the record, taken as a whole, could lead a rational trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also T. W. Elec. Service Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1985); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented through the prism of the substantive evidentiary burden").

In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 586 n. 11 (1986). In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (citing *Celotex*, 477 U.S. at 322). With these standards in mind, it is important to note that

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 10

plaintiff bears the burden of proof at trial over the issues raised in this motion, *e.g.*, whether or not defendants acted with deliberate indifference or failed to follow the accepted standard of care for a healthcare provider. *See Grimes*, 951 F.2d at 239.

When presented with a motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Dress & Co*., 398 U.S. 144, 158-59 (1970)). Conclusory, nonspecific statements in affidavits are not sufficient; and, the court will not presume "missing facts". *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990). In addition, weighing of evidence and drawing legitimate inferences from facts are jury functions, and not the function of the court. *See United Steel Workers of America v. Phelps Dodge Corps*., 865 F.2d 1539, 1542 (9th Cir. 1989).

A.    42 U.S.C. § 1983 Personal Participation

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law and (2) his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Paratt v. Taylor*, 451 U.S. 527 (1981). A third element of causation is implicit in the second element. *See Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert denied*, 449 U.S. 875 (1980).

With respect to causation, a plaintiff must plead facts that sufficiently allege that the particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). To be liable for "causing" the

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 11

deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, that he or she is legally required to do, and which causes the plaintiff's deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *see also Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. The plaintiff must set forth specific facts showing a causal connection between each defendant's actions and the harm allegedly suffered by plaintiff. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Rizzo*, 423 U.S. at 371.

Plaintiff claims that the medical treatment he received for his hernia violated his rights under the First and Eighth Amendments. However, Plaintiff fails to state with the required particularity what actions on the part of the individual Defendants led directly to the constitutional deprivations he claims.

For example, the undisputed record reflects that Defendants Firth, Davidson, and J. Doe Correctional Officers 1-5, are corrections officers who have no input into Plaintiff's medical treatment. Dkt. 30-2, Attach. C, Declaration of John Firth, ¶¶ 4-6 and Attach. G, Declaration of Jason Davidson ¶¶ 5-7. In his declaration, Plaintiff states that Defendant Firth knew he was in pain and should have taken him to a hospital immediately after the accident. Dkt. 32, Moore Decl., at ¶ 10. However, medical records provided by Plaintiff and testimony of Plaintiff's medical providers at DOC reflect that Plaintiff did not complain of pain immediately after the accident. Moreover, Plaintiff is not qualified to state the medical opinion that his injuries required immediate attention in a hospital emergency room.

1    Similarly, Defendant Myisha Opulencia, an Administrative Assistant at MCC, had no

2    input into the medical treatment received by Plaintiff. Dkt. 30-2, Attach. H, Opulencia Decl., ¶4.

3    Plaintiff's only allegation against Defendant Opulencia is that she responded to a kite from

4    Plaintiff asking for an "estimated cost for a rt. Inguinal hernia repair" so that he could "opt for

5    offender paid health care." Dkt. 32, Moore Decl., Ex. 3, p. 14. Defendant Opulencia responded:

6    Mr. Moore, DOC Health Services cannot provide any sort of cost estimates. If
     you choose to utilize the offender paid health care plan, please let me know and I
7    will send you the packet. You would be required to find your own offsite
     practitioner and obtain your own estimate. If you have any additional questions,
8    please let me know.

9    *Id.* Plaintiff offers no explanation or evidence of how this sole communication responding to his

10   query caused a constitutional deprivation.

11   Plaintiff also names Defendants Steven Jewitt, a psychiatrist, and Dr. Michelle Scallon, a

12   psychology associate. These doctors are employed by MCC Medical Department in the mental

13   health and psychological services section. Neither of them was involved in or had any input into

14   the medical treatment of Plaintiff's hernia. Dkt. 30-2, Attach. B, Declaration of Dr. Steven

15   Jewitt, ¶ 4; Attach. D, Dr. Michelle Scallon, ¶ 4. Plaintiff's allegations and the kites attached to

16   his declaration establish only that Defendants Jewitt and Scallon were aware that Plaintiff sought

17   mental health treatment (for depression and anxiety) following the accident. *See* Dkt. 32; Ex. A.

18   There is no evidence indicating that Plaintiff sought treatment from them for his hernia.

19   Plaintiff also claims generally, that Defendants did not evaluate his injuries and that he

20   did not receive medical attention for his post-accident injuries. Dkt. 31. First, these claims are

21   belied by the declarations of Defendants Awad, Hutton, and Stanbury and indeed, by the

22   documents produced by Plaintiff. *See* Dkt. 31-4 (notes of visits with Defendants Stanbury and

23   Hutton). Second, Plaintiff's attempt to broaden his claim that he was not provided proper

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 13

1   medical care for a hernia to now include a claim that he was not provided proper mental health

2   care is inappropriate. These claims are beyond those raised in his complaint and will not be

3   considered here.

4          Plaintiff also asserts allegations against "the marital community comprised thereof" of

5   each named Defendant. The blanket inclusion of the marital community without any allegations

6   as to involvement in an alleged deprivation is insufficient. Each named defendant has attested

7   that their spouse does not work for Washington Department of Corrections, and/or took no part

8   in any medical decisions or treatment of Plaintiff, or that they were not married at the times

9   relevant to Plaintiff's complaint. *See* Declarations of Firth, Jewitt, Opulencia, Scallon, Davidson,

10  Stanbury, and Hutton. Dkt. 30-2, Attachments C, B, H, D, G, F, and E, respectively.

11  Additionally, Plaintiff has acknowledged that the spouses and marital communities of the named

12  defendants took no part in the medical treatment, consultation or care he was provided. Dkt. 30,

13  Attach. A (RFA #2).

14         Based on the foregoing, the court grants the motion for summary judgment of Defendants

15  Firth, Davidson, J. Doe Correctional Officers 1-5, Opulencia, Jewitt, and Scallon, as well as their

16  spouses and marital communities, for lack of personal participation in the alleged constitutional

17  violations.

18  B.     Supervisory Defendants

19         Plaintiff asserts a § 1983 claim for alleged violation of his Eighth Amendment rights

20  against J. Doe Correctional Facility Superintendent and J. Doe Correctional Facility Medical

21  Director, in their supervisory capacity as "chief policy makers" for development of policies,

22  practices, and customs that Plaintiff alleges violated his Eighth Amendment rights. See Dkt. 1 at

23  p. 3, 13-15.

1    Supervisory personnel are generally not liable under § 1983 for the actions of their

2    employees under a theory of *respondeat superior* and, therefore, a plaintiff must allege some

3    facts that would support a claim that a supervisory defendant either personally participated in the

4    alleged deprivation of constitutional rights, knew of the violations and failed to act to prevent

5    them, or promulgated or implemented a deficient policy that "'itself is a repudiation of

6    constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*,

7    885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040,

8    1045 (9th Cir. 1989). Plaintiff's assertion that "[a]s a result of the . . . defendants' . . . policies,

9    practices, and customs . . ." medical staff at the Monroe Correctional Complex "believed that

10   their actions or inactions would not be properly monitored . . ." is insufficient to state a claim

11   under § 1983.

12   In his reply, Plaintiff argues that his claims against the supervising defendants rest on

13   their failure to adhere to DOC Policy 610.040 "Health Screenings and Assessments," which

14   requires that inmates be medically screened before they are admitted into the prison. Dkt. 32, Ex.

15   B; Dkt. 31, p. 21. This argument is unavailing as DOC Policy 610.040 applies to "health

16   screenings, assessments, and updates as necessary, between facility transfers, and upon release

17   into the community." Dkt. 32, Ex. B. In this case, Plaintiff was not being transferred from facility

18   to facility, he was returning to his home facility from a work crew assignment. Further, Plaintiff

19   admits in his declaration that he did receive a medical screening after returning to the facility –

20   he returned in the evening hours and was examined the next day. Dkt. 32 ¶ 9, 17.

21   As discussed in more detail below, Plaintiff has failed to establish that a violation of his

22   constitutional rights occurred and therefore, he cannot demonstrate that any supervisor directed

23   any such violation. Plaintiff has provided no medical evidence to support his contention that the

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 15

1   medical treatment he received at DOC was constitutionally deficient and the record evidence

2   indicates that Plaintiff received all medically appropriate care. *See,* Dkt. 30-2, Attach. I, Decl. of

3   Dr. Awad ¶¶ 24-31.

4       As Plaintiff has failed to demonstrate a constitutional violation, he cannot demonstrate

5   that any supervisor directed any such violation and the motion for summary judgment of

6   Defendants J. Doe Correctional Facility Superintendent and J. Doe Correctional Facility Medical

7   Director is granted.

8   C.    Eighth Amendment

9       Not every claim by a prisoner relating to inadequate medical treatment states a violation

10   of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must show

11   that the defendants acted with "deliberate indifference to serious medical needs." *Jett v. Penner*,

12   439 F.3d 1091, 1096 (9th Cir.2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285,

13   50 L.Ed.2d 251 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating

14   that failure to treat the condition could result in further significant injury or the unnecessary and

15   wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett*, 439

16   F.3d at 1096 (quotations omitted).

17       "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,

18   1060 (9th Cir.2004). To act with deliberate indifference, a prison official must both know of and

19   disregard an excessive risk to inmate health; "the official must both be aware of facts from which

20   the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

21   the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

22   Deliberate indifference in the medical context may be shown by a purposeful act or failure to

23   respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*,

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 16

439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle*, 429 U.S. at 104–05; *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F.Supp.2d 1098, 1105 (N.D.Cal.2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir.1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Thus, Plaintiff must show that a course of treatment his DOC providers chose was medically unacceptable under the circumstances, and in conscious disregard of an excessive risk to his health. Plaintiff cannot make this required showing. Plaintiff's basic allegation is that he did not receive satisfactory treatment for his hernia, but he provides no expert or medical testimony to support this claim. Plaintiff acknowledges that he must establish a "serious medical need" to maintain viability of his Eighth Amendment claim. Dkt. 31 p. 10. The Ninth Circuit has identified three situations in which a medical need may be deemed serious: (1) the patient has "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (2) "the presence of a medical condition that significantly affects an individual's

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 17

1   daily activities"; or (3) "the existence of chronic and substantial pain." *McGuckin v. Smith*, 974

2   F.2d 1050, 1059-60 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v.*

3   *Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

4          Plaintiff alleges generally that his care was "grossly inadequate," that his "serious

5   medical needs were not met" and that "that "[h]e had serious medical needs." However, these

6   unsubstantiated hearsay statements cannot form a valid basis for a defense against summary

7   judgment. *Celotex Corp.*, 477 U.S. at 323-24. Plaintiff also submits Dr. Gallagher's surgical

8   report to support his claim that he had a serious medical need that went untreated. However, the

9   surgical report reflects only that Plaintiff had a "moderate right inguinal hernia," Plaintiff rated

10   his pain as 2-3 out of 10, and that Plaintiff opted for an elective repair of the hernia because he

11   found the "hernia bothersome enough to want to go ahead and have it repaired at this time." Dkt.

12   31-5, p. 3.

13          Having reviewed all of the materials presented by the parties, the court concludes that the

14   record does not establish that defendants were deliberately indifferent to Plaintiff's medical

15   needs. The record reflects that Plaintiff received all medically appropriate treatment for his

16   hernia and that Defendants treated Plaintiff's hernia in a medically appropriate manner by

17   clinical monitoring, consistent with the directives provided by the OHP. See Dkt. 30-2, Attach. I,

18   Awad Decl., ¶¶ 17-19, 24-31; Attach. F, Stanbury Decl., ¶¶ 10-13; and Attach. E, Hutton Decl.,

19   ¶¶ 10-13. Based on his review of the medical records, Dr. Awad attested that Plaintiff never

20   reported intractable pain or pain that interfered with his activities of daily living and in fact,

21   reported that his pain subsided over a period of several weeks. Dkt. 30-2, Attach. I, Awad Decl.,

22   ¶ 20. The medical records submitted by Plaintiff also show that he was seen the day after the

23   accident and was given pain medication and that x-rays were taken of his specified injuries. Dkt.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 18

32, Moore Decl., Ex. B. The kites submitted by Plaintiff indicate that his request for surgery was referred to a Care Review Committee ("CRC") and that on July 16, 2016, the CRC notified Plaintiff to "please continue to work with your primary care provider and report any significant changes in your condition." *Id.*, Ex. C, p. 9.

Based on the materials presented and viewing them in the light most favorable to Plaintiff, the court concludes that Defendants' course of treatment – reducing the hernia, providing pain medication, and watchful waiting – was not an unreasonable course of treatment. *See*, *e.g.*, *Hamby v. Hammond*, Case No. 3:14-CV-05065-RBL, 2015 WL 1263253 (W.D. Wash. Mar. 19, 2015) (Judge Leighton), *aff'd*, 821 F.3d 1085 (9th Cir. 2016) (prison officials did not pursue a medically unreasonable course of treatment when they declined to refer an inmate for surgical evaluation of a reducible umbilical hernia, even if they were aware inmate was in chronic pain); *Johnson v. Doughty*, 433 F.3d 1001, 1014-15 (7th Cir. 2006); *Cox v. Jackson*, 579 F. Supp. 2d 831 (E.D. Mich. 2008) (denying preliminary injunction for surgical repair of abdominal hernia); *Combs v. Washington State*, *et al.*, Case No. 12-5280-RBL, 2014 WL 4293960, at *26 (W.D. Aug. 29, 2014) (Judge Leighton); *Brandon v. Albert*, No. C10-360-JCC, 2010 WL 6613108, at *5 (W.D. Wash. Dec. 22, 2010) (strategy of watchful waiting for inguinal hernia did not violate Eighth Amendment), *adopted by* 2011 WL 1753778 (May 9, 2011); *Foxley v. Cristman*, C06-0114-RSL, 2007 WL 171902, (W.D. Wash. Jan. 17, 2007) (same); *Rossi v. Nev. Dep't of Corr.*, 390 Fed App'x 719 (9th Cir. 2010); *Anderson v. Bales*, No. C12-2244, 2013 WL 1278122, (7th Cir. 2013) (no deliberate indifference based on failure to provide hernia surgery for reducible hernia); *Brown v. Beard*, 445 Fed App'x 453, 455-56 (3rd Cir. 2011) (inmate did not state an Eighth Amendment claim for failing to provide surgery for reducible hernia); *Rodriguez v. Sec'y of Pa. Dep't of Corr.*, 441 Fed App'x 919, 923-24 (3rd Cir. 2011)

1    (affirming dismissal for failure to state a claim based on failure to operate on hernia until it

2    became strangulated); *Webb v. Hamidullah*, 281 Fed App'x 159 (4th Cir. 2008); *Horton v. Ward*,

3    123 Fed App'x 368, 373 (10th Cir. 2005) (no Eighth Amendment violation for failing to operate

4    on umbilical hernia).

5        Plaintiff's attempts to self-diagnose are not admissible as medical opinion evidence

6    because he is not a medical provider and he has not put forth any admissible medical evidence to

7    support his claim that he was denied constitutionally required medical care. Plaintiff's Eighth

8    Amendment medical claim boils down to a disagreement with his DOC medical providers over

9    whether he required surgery. A disagreement with a method of treatment does not support a

10   claim of deliberate indifference. *See Estelle*, 429 U.S. at 103–05.

11       Accordingly, the court grants Defendants' motion for summary judgment on Plaintiff's

12   Eighth Amendment claims.

13   D.    <u>First Amendment</u>

14       In support of his First Amendment claim, Plaintiff alleges that he "used his words" [*i.e.*,

15   kites] to relay to the Defendants that he was injured and in need of medical treatment, but that he

16   was ignored, "locked in a cell without medicine, without medical attention and never brought . . .

17   to see a doctor for proper treatment" of his hernia. Dkt #1 at p. 12, ¶ 33. These allegations are

18   directly and completely contradicted by the evidence. As discussed above, each of Plaintiff's

19   kites were responded to per Department of Corrections policy. Dkt. 30-2, Attach. F, Stanbury

20   Decl., ¶14 and Attach. E, Hutton Decl., ¶14. And, as detailed above, Plaintiff was seen by

21   doctors and medical staff and was provided appropriate medical treatment. *See, e.g.*, Dkt. 30-2,

22   Attach. I, Awad Decl., ¶¶ 19, 24-31. More importantly, Plaintiff's alleged First Amendment

23   violation is simply an improper re-packaging of his Eighth Amendment claim.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 20

1    When another provision of the Constitution provides an explicit textual source of

2  constitutional protection, the claim must be analyzed under that source rather than the

3  generalized notion of due process. *Conn v. Gabbert*, 526 U.S. 286, 293, 119 S. Ct. 1292, 143

4  L.Ed.2d 399 (1999) (challenges to the reasonableness of a search falls under the Fourth

5  Amendment, not the Fourteenth); *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 127

6  L.Ed.2d 114 (1994) (a challenge to the probable cause of prosecution falls under the Fourth

7  Amendment, not substantive due process); *Graham v. Connor*, 490 U.S. 386, 395 (1989) (when

8  another amendment provides an explicit textual source of constitutional protection, that

9  amendment guides the analysis rather than the notion of substantive due process). Here,

10  Plaintiff's claim that he was denied appropriate medical treatment falls under the Eighth

11  Amendment and as discussed above, is factually unsupported. Therefore, the Court will not

12  analyze Plaintiff's factually unsupported claim under another constitutional amendment.

13    In his response, Plaintiff argues Defendants violated his First Amendment rights because

14  they affirmatively shut down his ability to seek medical help. However, this claim is based solely

15  on hearsay statements contained in Plaintiff's declaration, where he claims that Defendant

16  Stanbury and a person whom he believes was a prison superintendent told him to quit writing

17  kites. Dkt. 32, Moore Decl., ¶¶ 22, 23. More importantly, the assertions are not supported by the

18  record, which reflects (as detailed above) that, for the six months following the accident until

19  Plaintiff's release from prison, medical staff saw and treated Plaintiff on at least nine occasions;

20  Plaintiff never reported intractable pain or acute or ongoing distress but instead reported that his

21  pain subsided over a period of weeks and the pain never affected his activities of daily living;

22  and, Plaintiff's hernia was reducible each time he was assessed for complaints. Decl. of Dr.

23  Awad ¶ 24-31, Decl. of Stanbury ¶12 and Decl. of Hutton ¶12.

1    In short, the record reflects that Plaintiff received medical care and that his kites were

2    answered. In other words, his "words were heard" even though Plaintiff disagrees with the

3    method of treatment chosen by his providers. However, the First Amendment does not guarantee

4    that opinions expressed will be agreed with, but rather only that they can be freely expressed.

5    Accordingly, Defendants' motion for summary judgment on his First Amendment claim is

6    granted.

7    E.    Americans With Disabilities Act ("ADA")

8        Plaintiff claims violation of his rights under the ADA based upon the individual

9    defendants' failure to make reasonable modifications in light of his hernia and medical treatment,

10   and further that the supervisory defendants failed to ensure that such modifications occurred.

11   Dkt. 1, p. 17. In his response, Plaintiff claims that he was discriminated against because he was

12   suffering from a disability – an inguinal hernia – that caused him to be dismissed from a work

13   crew and forced to remain in his bed, and that Defendants failed to accommodate his illnesses

14   and other injuries from the accident by forcing him to "remain in his cell to suffer alone and get

15   by the best he could until he was released in February 2017."

16       Plaintiff makes these claims directly against individual defendants for their alleged

17   failure to take certain actions or, for the supervising defendants, to ensure that such actions were

18   taken.  However, the comprehensive remedial scheme created by the ADA precludes actions

19   against defendants in their individual capacities. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th

20   Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official

21   in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the

22   Rehabilitation Act.")

23

Plaintiff now requests leave to amend his Complaint to comport with this established law. The court concludes that leave to amend should be denied because such an amendment would be futile. Even if the court allowed Plaintiff to name defendants in their official capacity, his ADA claim would fail because it is essentially reiterating his disagreement with the medical treatment he received. The ADA does not provide a cause of action based upon mere disagreement over a course of medical treatment. See Dkt. 1, pp. 15-17. *See Grant v. Alperovich*, 993 F. Supp. 2d 1356, 1364–65 (W.D. Wash. 2014) (citing *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir.2005) ("a lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions."); *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir.2005) ("These are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or the Rehabilitation Act."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996) ("The ADA does not create a remedy for medical malpractice.")).

The court grants Defendants' motion for summary judgment on Plaintiff's ADA claim.

F.    Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. "Government officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted). Because the court finds that Plaintiff has failed to establish a constitutional violation, the court does not reach this issue.

Based on the foregoing, it is **ORDERED**:

1)    Defendants' motion for summary judgment (Dkt. 30) is **GRANTED**; and

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 23

1      2)     Plaintiff's claims against Defendants are **dismissed with prejudice**.

2    DATED this 10th day of July, 2020.

4                 BRIAN A. TSUCHIDA

5                 Chief United States Magistrate Judge